**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**Order Filed on March 28, 2017
by Clerk, U.S. Bankruptcy
Court - District of New Jersey**

_____
                                        :
In re:                                 :
                                        :      CHAPTER 7
DOMINIC-JAMES PORCORO,   :
                                        :      CASE NO.:    15-24387 (SLM)
                     Debtor.          :
_____  :


**OPINION**

**A P P E A R A N C E S :**

Daniel Kohn, Esq.
RC Law Group, PLLC
285 Passaic Street
Hackensack, NJ 07601
*Counsel for the Debtor, Dominic-James Porcoro*

Kate Roggio Buck, Esq.
Matthew Heimann, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
*Co-Counsel for Verizon New Jersey Inc., Verizon Long Distance and Verizon Online LLC*

Darrell W. Clark, Esq.
Tracey M. Ohm, Esq.
Stinson Leonard Street, LLP
1775 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
*Co-Counsel for Verizon New Jersey Inc., Verizon Long Distance and Verizon Online LLC*

**STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

Presently before this Court is a *Motion to Hold Verizon Liable for Violating the Automatic Stay, for Punitive Damages, Legal Fees and Costs* (the "**Motion**"), (Docket No. 11), filed by the debtor, Dominic-James Porcoro (the "**Debtor**"), by and through his counsel, RC Law Group, PLLC.  The Debtor seeks sanctions against Verizon New Jersey Inc., Verizon Long Distance and Verizon Online LLC (collectively "**Verizon**"), for alleged violation of the automatic stay under 11 U.S.C. §§ 362(a)(6) and 362(k).  The narrow issue before the Court is whether a creditor's accurate reporting post-petition—but pre-discharge—of a debtor's outstanding balance to a credit reporting agency violates the automatic stay.  This narrow issue is one of first impression within the Third Circuit.

Upon consideration of the parties' pleadings and oral arguments, this Court finds Verizon did not violate the automatic stay in the manner it reported the status of the Debtor's account to credit agencies during the pendency of the Debtor's bankruptcy case prior to the Debtor receiving a discharge.  In finding that Verizon did not violate the automatic stay, this Court need not review the issue of willfulness or damages under Section 362(k).

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).  Venue is proper in this Court pursuant

to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.[1]

### III.  BACKGROUND

Pre-petition, the Debtor was a FIOS "triple play" customer of Verizon who utilized Verizon's telephone, internet and FIOS TV service.  (Docket No. 31).  At some point, the Debtor ceased paying his Verizon account.  Consequently, on or about June 2015, Verizon suspended service on the Debtor's account for non-payment.  (*Id*.)

On July 31, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**").  On Schedule F of his Petition, the Debtor scheduled "Verizon" as an unsecured creditor in the amount of $1,709.00.  The address for Verizon listed on the Petition is: "Attn: Bankruptcy Dept., 500 Technology Drive, Suite 550, Weldon Spring, MO 63304."

On August 5, 2015, the Court's *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines* ("**Bankruptcy Notice**") was sent to all creditors listed on the Petition, including Verizon, informing the listed creditors of the Debtor's bankruptcy filing.  (Docket No. 5).

### A.  *The Debtor's Stay Violation Motion Against Verizon*

On November 12, 2015, the Debtor filed the Motion presently before this Court.  (Docket No. 11).  In the Motion, the Debtor argued three main points.  First, the Debtor asserted that Verizon had notice of his bankruptcy filing.  (*Id.* at 2).  Second, the Debtor asserted that "Verizon continued its collection efforts against the Debtor" after he filed bankruptcy by reporting an outstanding balance due on the Debtor's credit report on September 1, 2015 without seeking stay

---

[1] To the extent any of the findings of fact might constitute conclusions of law, they are adopted as such and vice versa.

relief.  (*Id.*)  Third, the Debtor argued that Verizon's post-petition, pre-discharge credit reporting

constituted a willful violation of the automatic stay under Section 362(k).  (*Id.*)

As part of the Motion, the Debtor provided this Court with an excerpt of a report titled

"Bankruptcy Credit Report," dated October 27, 2015, issued by CIN Legal Data Services (the

"**October 27, 2015 Bankruptcy Credit Report**").  (Docket No. 11, Ex. D).  The October 27, 2015

Bankruptcy Credit Report detailed all of the Debtor's reported non-mortgage liabilities with

balances as of October 27, 2015.  At the time of the October 27, 2015 Bankruptcy Credit Report,

a total of nine creditors separately reported the Debtor's debt with them to either TransUnion,

Experian or both of these agencies.  Of the nine reported non-mortgage liabilities, the October 27,

2015 Bankruptcy Credit Report showed that Verizon reported the Debtor's debt in the amount of

$1,708.00 to TransUnion as "current" and "past due":

| Account Details | Balance Details | Account Dates | Payment Details | Bureau Reported Address | Source |
|---|---|---|---|---|---|
| Name: Verizon<br>Type: Individual / Applicant<br>Account: XXXXXXXXX0001<br>Status: Closed, Account Closed Open | Current:<br>$1,708<br>High Credit:<br>$0 | Date Opened:<br>04/12/2012<br>Last Reported:<br>09/01/2015<br>Last Activity:<br>06/17/2015 | Monthly:<br>$0<br>Past Due:<br>$1,708<br>Pay History:<br>Not Available | 500 Technology Dr<br>Weldon Spring, MO 63304<br>877-325-5156 | TU |

(*Id.*)

On November 13, 2015, the Debtor received his discharge in the instant case.  On the same

date, Verizon again reported the status of the Debtor's account to TransUnion and Experian, but

changed it to show $0.00 as current and $0.00 as past due.  (*See* the "**December 23, 2015**

**Bankruptcy Credit Report**") (Docket No. 35-1, Ex. 2).

Thereafter, pursuant to the Court's request for supplemental briefing,[2] the Debtor filed a *Memorandum of Law in Support of Debtor's Motion to Find Verizon Liable for Violating the Automatic Stay* on December 14, 2015.  (Docket No. 19).  In the supplemental memorandum, the Debtor argued that as of the Petition Date, "Verizon was obligated to immediately cease any and all collection attempts . . . [yet] continued its collection efforts against [the] Debtor [when] it re-report[ed] this debt [on September 1, 2015] with an outstanding balance due on Debtor's credit report."  (*Id*. at 4).  The Debtor further argued that Verizon's actions "resulted in additional negative reporting and further reduction in Debtor's credit score."  (*Id*.)

### B.  *Verizon's Opposition to the Debtor's Stay Violation Motion*

On January 26, 2016, Verizon filed its *Opposition of Verizon to Debtor's Motion to Hold Verizon Liable for Violating the Automatic Stay, for Punitive Damages, Legal Fees and Costs* (the "**Opposition**").  (Docket No. 31).  Specifically, Verizon argued that: (1) it followed the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681-1681x, when it initially reported the Debtor's outstanding balance post-petition—but pre-discharge—and later updated its report after the Debtor was discharged; and (2) Verizon's truthful post-petition reporting of the debt owed to it did not violate the automatic stay.  In its Opposition, Verizon also admitted to receiving notice of the Debtor's bankruptcy filing on August 7, 2015 – eight days after the Petition Date.  Verizon contended that at that time of notice, it "updated the collection status of Debtor's account to indicate that the case was in bankruptcy but not yet discharged."  (*Id*. at 2).  Verizon asserted that,

---

[2] In addition to filing this Motion on November 11, 2015, the Debtor filed two separate motions against other creditors to hold the subject creditor(s) liable for violating the automatic stay (the "**First Stay Violation Motion**" and the "**Second Stay Violation Motion**," respectively).  (Docket Nos. 9 and 10).  On December 8, 2015, the Court heard oral argument for the contested Second Stay Violation Motion.  At the December 8, 2015 hearing, the Court denied the Second Stay Violation Motion and upon finding that the Debtor did not sufficiently brief the stay violation issue, the Court further directed Debtor's counsel to file supplemental briefs for both the First Stay Violation Motion and the Motion presently before this Court.  By Order dated December 28, 2015, this Court denied the First Stay Violation Motion.  (Docket No. 28).

on September 1, 2015, it merely reported a debt whose existence had not yet been extinguished. (*Id*. at 6). Verizon concluded that "the debt was only extinguished when the discharge was granted, at which time [Verizon] updated the Debtor's records and reporting to reflect the extinguished debt." (*Id*. at 6-7).

Verizon further argued that as a furnisher of consumer report information, its post-petition credit reporting of the Debtor's account complied with the requirements set forth in the FCRA. (*Id*.) Verizon asserted that the FCRA requires furnishers of consumer report information to follow policies and procedures to ensure the information is as accurate as possible. Verizon also argued: (i) in reporting the status of the Debtor's account during his bankruptcy, it followed the policies and procedures contained in the Consumer Data Industry Association Credit Reporting Resource Guide provided by the Consumer Data Industry Association (the "**Verizon Guide**"); (ii) the Verizon Guide's two-step reporting process of reporting the Debtor's account status as it existed at the time of the Petition Date up until his discharge and changing the report on the Debtor's account to reflect it was discharged in bankruptcy "closely resembles the accurate reporting promoted by the [FCRA];" (iii) the procedures set forth in the Verizon Guide are reasonable and "logical" since the "the debt is contractual" and may be assumed and cured during the time between the Petition Date and the discharge; and (iv) in doing the aforementioned, Verizon "both complied with the FCRA and truthfully reported, without attempting to collect on, the balance on the Debtor's account." (*Id.* at 3-5).

On February 23, 2016, Verizon filed the *Declaration of Eric J. Frank in Support of the Opposition* (the "**Frank Declaration**"). (Docket No. 33). Mr. Frank is the "credit/collections consultant" for Verizon Corporate Resources Group LLC. (*Id.* ¶ 2). Mr. Frank stated he is personally familiar with Verizon's "system for credit reporting accounts held by customers who

6

file a bankruptcy petition." (*Id*. ¶ 3). Mr. Frank certified that Verizon's reports "to credit agencies are made and kept by a reliable system in the ordinary course of regularly-conducted business activity at or near time of the activity that gives rise to such reports by persons with knowledge of the information being recorded" and that making such reports "is a regular practice" of Verizon. (*Id*. ¶ 4). Mr. Frank further stated that "when providing information to credit reporting agencies, Verizon follows the policies and procedures contained in [the Verizon Guide]."[3] (*Id*. ¶ 5).

Pursuant to the Verizon Guide, "in the months between when a bankruptcy petition is filed and the resolution of a bankruptcy case, such as the entry of a discharge order, a creditor should report an individual's current balance as the 'outstanding balance amount.'" (*Id*. ¶ 7). The Verizon Guide also indicates that "after the entry of a discharge order, a creditor should update the Consumer Information Indicator on the report to indicate that the debt has been discharged." (*Id*. ¶ 8).

Accordingly, Mr. Frank certified that when "Verizon received notice of Debtor's bankruptcy on August 7, 2015, [it] updated the collection status of Debtor's account to indicate that it was in bankruptcy, but not yet discharged. [Then], in the months between the [P]etition and the discharge, [Verizon] reported to credit bureaus the account status as it existed at the time of the Petition Date." (*Id*. ¶¶ 15-16). Verizon continued that when it was notified of the Debtor's discharge, it "updated the collection status of Debtor's account to indicate that a discharge was granted November 13, 2015" and "updated its reports to indicate that the account was discharged and no balance was due." (*Id*. ¶¶ 16-17). According to Mr. Frank, by taking the aforementioned actions, Verizon followed the "bankruptcy discharge policies and procedures set forth in the [Verizon Guide]." (*Id*. ¶ 17).

---

[3] As referenced in Exhibit A to the Frank Declaration, for confidentiality purposes, Verizon did not attach a copy of the Verizon Guide to the Frank Declaration.

### C.  *The Debtor's Reply to Verizon's Opposition*

Thereafter, on March 30, 2016, the Debtor filed a Reply to Verizon's Opposition (the "**Reply**").  (Docket No. 35).  In his Reply, the Debtor again stressed that he suffered actual damages because of Verizon's post-petition, pre-discharge reporting of his debt to credit agencies.  (*Id.* at 2).4  The Debtor asserted that Verizon re-reported his debt to credit reporting agencies without any notation regarding his pending Chapter 7 bankruptcy despite having sufficient notice, time and opportunity to include such a notation.  (*Id.* at 6).  In addition, the Debtor asserted that Verizon "kept Debtor's account status as 'open' with a $1,708.00 balance due." (*Id.*)  The Debtor concluded that "[t]hese facts strongly indicate that the furnishing of such information to the credit reporting agencies by Verizon was done with the sole intent to coerce Debtor into paying this pre-petition debt." (*Id.*)  The Debtor reiterated his position that "Verizon's truthful re-reporting of [the] Debtor's pre-petition debt to the credit reporting agencies constitutes a collection action and violation of the Automatic Stay." (*Id.*)

The Reply also addressed Verizon's assertions regarding FCRA compliance.  Specifically, the Debtor asserted that the Fair Debt Collection Practices Act ("**FDCPA**"), 15 U.S.C. §1692 *et seq.,* is the "appropriate statutory regime to offer insight into the definition of what constitutes an 'act to collect' under 11 U.S.C. §362." (Docket No. 35 at 3).  The Debtor further asserted that under the FDCPA, reporting a debt to a credit reporting agency is an activity in connection with the collection of a debt.  (*Id.*)  Therefore, the Debtor argued that Verizon's post-petition reporting of the Debtor's debt to credit agencies constituted an "act to collect." (*Id.* at 3-4).  With respect to

---

4 To support his claim for damages, the Debtor submitted a damage assessment report by Dean Binder.  (Docket No. 35-1, Ex. A).  The Debtor assigned Mr. Binder the title of "expert."  However, this Court made no findings as to whether Mr. Binder qualifies as an expert as there were no hearings on the issue.  Verizon reserved all of its rights regarding Mr. Binder since Verizon had no chance to conduct discovery or cross-examine him because of the lateness of the submission.

the FCRA, the Debtor maintained that Verizon's arguments of compliance with the FCRA have

"no bearing in the case at bar as Debtor's Motion does not allege a violation of the FCRA." (*Id.*

at 8).

### D. The April 5, 2016 Hearing

On April 5, 2016, the parties appeared before this Court for oral argument (the "**April 5th**

**Hearing**").   At the April 5th Hearing, the Debtor argued that his post-petition credit report

improperly showed a "current" and "past due" indebtedness to Verizon and failed to indicate the

Debtor was in bankruptcy.   The Debtor further alleged that Verizon knew the presence of such

improperly reported information in his post-petition credit report would damage his credit rating

and hinder his ability obtain new credit to purchase a car.   The Debtor also argued that Verizon's

post-petition reporting of his past-due amounts to the credit agencies up until the discharge, even

if such reporting was truthful, constituted an attempt to collect dischargeable debt in violation of

Sections 362(a)(6) and (k).

Conversely, at the April 5th Hearing, Verizon argued that credit reporting, whether pre-

petition or post-petition, is an established procedure of its business.   Verizon contended it reported

the status of the Debtor's account to credit agencies between September 2015 and November 2015

pursuant to FCRA requirements and its own established policy and procedures in the Verizon

Guide.   Verizon also reiterated its position that truthful credit reporting of any amount due up

through the date of discharge does not violate the automatic stay because it is not an act to collect

debt – merely reporting.   Verizon continued that the FCRA and its FCRA-compliant policies

permit truthful reporting of amounts due before a debtor receives a discharge because the debtor

may never receive a discharge, *i.e.*, if the case is dismissed or due to a Section 727 action.

Verizon further argued that its failure to update its report to indicate the Debtor was "in bankruptcy" during the Debtor's bankruptcy did not damage the Debtor's credit rating, prevent the Debtor from obtaining a new vehicle, or impact the Debtor's ability to obtain new credit.  Rather, Verizon argued that it was the Debtor's public and known status as a "bankrupt individual" that caused the negative effects (if any) that the Debtor experienced post-petition.  Finally, Verizon requested, to the extent this Court held Verizon violated the automatic stay, that the Court bifurcate its decision as to damages, permit Verizon to conduct discovery on that issue, and schedule a proof hearing.

At the conclusion of the April 5th Hearing, the Court reserved the decision on this matter. The Court directed the Debtor to provide the Court with a redacted, but otherwise complete, copy of the October 27, 2015 Bankruptcy Credit Report.  Likewise, the Court directed Verizon to submit a full, non-redacted copy of the Verizon Guide to the Court no later than Friday, April 8, 2016. Both parties timely complied with the Court's requests and filed their respective supplemental documents.[5]

## IV.  ANALYSIS

### A.  *Standard for Violation of the Automatic Stay*

The automatic stay under Section 362 of the Bankruptcy Code is triggered upon the filing of a bankruptcy petition.  *In re Rodriguez*, 629 F.3d 136, 138 (3d Cir. 2010).  It "operates as a stay of all enforcement proceedings against the debtor."  11 U.S.C. § 362(a).  Thus, it provides the debtor with a "breathing spell" by preventing creditors from pursuing collection efforts.  *See In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) (citing *Mar. Elec. Co.*, 959 F.2d 1194, 1204 (3d Cir.

---

[5] (*See* Docket Nos. 36 and 37).  The Debtor provided the entire "Bankruptcy Credit Report" by CIN Legal Data Services with the names and addresses of non-Verizon entities redacted.  (*See* Docket No. 36).

1991)).  Specifically, Section 362(a) states that the filing of the bankruptcy petition operates as an automatic stay of stay of, among other activities:

> i. the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case . . . ;
>
> . . .
>
> ii. any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> . . .
>
> iii. any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . . .

11 U.S.C §§ 362(a)(1), (3) and (6).

Section 362 also provides debtors with a remedy for willful violations of the automatic stay.  Subsection (k) provides that "an individual injured by any willful violation of stay . . . shall recover actual damages including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C § 362(k)(1).  To recover under Section 362(k), the debtor must prove three elements by a preponderance of the evidence: "(1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages."  *In re McGowan*, No. 10–12944, 2014 WL 793125, at *2 (Bankr. D.N.J. Feb. 2, 2014) (quoting *In re Lienhard*, 498 B.R. 443, 450 (Bankr. M.D. Pa. 2013)); *see In re Rodriguez*, No. 07-24687 MBK, 2012 WL 589553, at *3 (Bankr. D.N.J. Feb. 22, 2012).

### A. *Whether A Creditor's Accurate Reporting Post-Petition—But Pre-Discharge— of the Debtor's Outstanding Balance to a Credit Reporting Agency Violates the Automatic Stay.*

The issue before this Court is a narrow one: whether a creditor's accurate reporting post-petition—but pre-discharge—of a debtor's outstanding balance to a credit reporting agency

11

violates the automatic stay.6  Though the Court identified no binding authority on this specific

question, and the parties submitted none, case law from other jurisdictions is instructive.

First, *In re Sommersdorf*, 139 B.R. 700, 700 (Bankr. S.D. Ohio 1991), which the Debtor

heavily relied on, addressed whether the refusal to remove a notation on a non-debtor co-maker's

credit report constituted contempt, when the creditor who caused the credit report notation to be

made was receiving 100% payment under the debtors' plan.  In July 1988, the debtors and their

non-debtor friend signed a promissory note in favor of the creditor.  *Id.* at 701.  Subsequent to the

order for relief in the debtors' Chapter 13 case, the creditor transmitted to a credit reporting agency,

and the credit reporting agency published on the non-debtor's credit report, that the creditor had

taken a profit and loss write off on the account.  *Id.*  As a result of the credit report, the non-debtor

was unable to obtain a home loan.  *Id.*  One of the debtors requested that the credit report be

corrected, but the request was denied.  *Id.*  The debtors subsequently filed a motion for contempt

against the creditor and the credit reporting agency.  *Id.*

The *Sommersdorf* court analyzed the facts under both Section 362(a)(6) and the co-debtor

stay under Section 1301(a).  *See id.* at 701– 02.  During the hearing on the motion, counsel for the

creditor stated that federal banking audit requirements require a bank to charge off any amount

---

6 The Debtor argued in his Motion that Verizon's September 1, 2015 reporting of his outstanding balance as it appeared
on the Debtor's credit report constituted a continuation of Verizon's collection efforts.  (*See* Docket No. 11 at 2, 4).
In its Opposition, Verizon framed the issue as whether the truthful reporting of debts violates the stay.  (*See* Docket
No. 31 at 5).  In his Reply, the Debtor asserted that "Verizon's debt was incorrectly reported from August 4, 2015 -
December 23, 2015" and that "Verizon fail[ed] to correct its reporting." (Docket No. 35 at 2).  The Debtor continued
that:

> The issue before the Court is not whether the information re-reported on Debtor's
> credit report was true or false.  The issue at bar is whether the furnishing of
> information to a credit reporting agency, while a bankruptcy is pending, is
> considered a collection action and as such a violation of the Automatic Stay.

(*Id.* at 3).  However, the Debtor ultimately "resubmit[ted]its position that Verizon's *truthful* reporting of Debtor's
pre-petition debt to the credit reporting agencies constitutes a collection action and violation of the Automatic Stay."
(*Id.* at 6) (emphasis added).

more than four months in arrears and that it was the creditor's practice to do so.  *Id.*  However, the

court found that "there is a distinction between an internal bank accounting procedure and the

placing of a notation on an obligor's credit report. We find that the latter most certainly must be

done in an effort to effect collection of the account."  *Id.* (citing *In re Spaulding*, 116 B.R. 567,

570 (Bankr. S.D. Ohio 1990)).  The court continued that "[s]uch a notation on a credit report is, in

fact, just the type of creditor shenanigans intended to be prohibited by the automatic stay."

*Sommersdorf*, 139 B.R. at 701 (citing H.R. Rep. No. 95-195, 95th Cong. 1st. Sess. 342 (1977),

*reprinted in* 1978 U.S. Cong. & Admin. News 5787, 6298).

The *Sommersdorf* court continued that although the stay created by Section 1301 is not as

broad as Section 362, the two provision must be read together.  139 B.R. at 702.  The court

observed that Section 1301 is designed primarily for the protection of the principal debtor by

insulating that individual from indirect pressures exerted by creditors on friends, relatives and

fellow employees.  *Id.*  Finding that Section 1301(a), like Section 362, prohibits "acts" to collect

debts, the court concluded that the notation on the non-debtor co-maker's credit report violated the

automatic stay of action against a co-debtor under Section 1301.  *See id.*  The court noted that the

violation was particularly flagrant given that the creditor was being paid 100% under the plan and

thus would not have prevailed on a motion for relief from the stay.  *See id.* (citing *Harris v. Ft.

Oglethorpe State Bank*, 21 B.R. 1019, 1022 (E.D. Tenn. 1982)*, aff'd,* 721 F.2d 1052 (6th Cir.

1983)).  However, the court also found that the creditor's actions did not amount to civil contempt,

nor did Section 1301 provide for recovery of damages or costs and fees.  *See Sommersdorf*, 139

B.R. at 702.  Finally, notwithstanding that the court specifically found a violation of the stay

created by Section 1301 rather than Section 362, the court awarded damages to the debtor under

Section 362, reasoning that "the legislative history is clear that both provisions serve to protect the debtor." *Id.*

In *In re Keller*, No. 12-22391-B-13, 2016 WL 3004488, at * 1 (Bankr. E.D. Cal. May 17, 2016), the debtor-spouses filed a petition under Chapter 13 of the Bankruptcy Code on February 7, 2012.[7] The *Keller* court confirmed the debtors' plan on or about October 19, 2012 and entered the confirmation order on or about December 10, 2012. *Id.* More than three years later, one of the debtors obtained a three-bureau (Experian, Equifax, Transunion) credit report that apparently showed all three bureau reports reflected late payments from March 2014 through December 2015 and listed the debtors' account as $9,297 past due. *See id.* at *2. The debtors also alleged that the credit report reflected "[one of the creditors] failed to report that account included in bankruptcy." *Id.* On or about January 27, 2016, the debtors were denied credit based on information the potential lender received from Equifax. *Id.* The debtors subsequently filed a motion seeking, *inter alia*, sanctions for alleged violations of the automatic stay. *Id.* at *1.

The *Keller* debtors specifically stated that "'[b]y reporting misleading and inaccurate information on Debtors [sic] credit reports, [multiple creditors] have willfully acted to collect on debt that is currently subject to the automatic stay . . . . '" *Id.* at *2 (court quoting the debtors' submission). However, the debtors' counsel stated during oral argument that "accuracy of the credit information reported was irrelevant" and that "*any* post- petition credit report of adverse information is, as a matter of law, a *per se* stay violation under § 362(a)(6) . . . . " *Id.* Thus, the *Keller* court found that the narrow question before it was whether, as a matter of law, the mere act of reporting adverse credit information is a *per se* violation of Section 362(a)(6). *Id.*

---

[7] The District Court for the Eastern District of California decided *Keller* after this Court held oral argument in this matter.

The court concluded that the mere act of reporting adverse credit information after an order for relief is entered is not, as a matter of law, a *per se* violation of Section 362(a).  *Id.* at *4.  In its analysis, the *Keller* court provided a comprehensive study of the limited number of courts reviewing the narrow issue.  The *Keller* court first noted that the District Court for the Northern District of California twice rejected the idea that credit reporting is a *per se* violation of the automatic stay.  *See id.* at *2-3 (citing *Giovanni v. Bank of Am., N.A.,* No. C 12–02530 LB, 2012 WL 6599681 (N.D. Cal. Dec. 18, 2012); *Mortimer v. J.P. Morgan Chase Bank N.A.*, No. C 12–1936 CW, 2012 WL 3155563 (N.D. Cal. Aug. 2, 2012)).8  The court similarly observed that another case, *Mahoney v. Washington Mutual, Inc. (In re Mahoney)*, 368 B.R. 579, 581 (Bankr. W.D. Tex. 2007), rejected the notion that, as a matter of law, the mere act of credit reporting could amount to a *per se* violation of the discharge injunction.  *See Keller*, 2016 WL 3004488 at * 3.  The *Keller* court found that *Mahoney*'s reasoning was "grounded in, and thus equally applicable to, §362(a)."  *Keller*, 2016 WL 3004488 at * 3.

Next, the *Keller* court found that *In re Sommersdorf*, 139 B.R. 700 (Bankr. S.D. Ohio 1991), was not persuasive and did not lead to a contrary result.  *See Keller*, 2016 WL 3004488 at * 4.  In finding *Sommersdorf* unpersuasive and declining to follow it, the *Keller* court noted that

---

8 The plaintiff in *Mortimer* alleged that the creditor reported, post-petition and post-discharge, inaccurate information concerning his credit card account to a credit reporting agency, and that the creditor subsequently failed to investigate and correct the disputed information.  2012 WL 3155563 at *1.  However, the plaintiff's complaint alleged only violations of the FCRA, state consumer protection laws and common law causes of action.  In *dicta*, the court observed:

> Section 362 does not stand for the proposition that an individual is not obliged to make timely payments on his accounts while his petition for bankruptcy is pending.  Rather § 362 limits collection activities in pursuit of claims that arose before the bankruptcy petition.  While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so.

*Id.* at *3.

15

"*Sommersdorf's per se* analysis has been rejected or largely not followed" by the other courts surveyed.9 *Keller*, 2016 WL 3004488 at * 3.10

Lastly, the *Keller* court found that "the weight of what little authority exists correctly recognizes that [the] act of credit reporting alone, even reporting of adverse information, is not a *per se* stay violation." *Id.* at * 4.  In so concluding, the *Keller* court cited to a number of cases.11 Based on its analysis, the *Keller* court concluded that the mere act of reporting adverse credit information after an order for relief is entered is not, as a matter of law, a *per se* violation of Section 362(a).  *Id.* at * 4, *5.  Accordingly, the court denied the debtors' request for sanctions under

---

9 Although the court in *Keller* did not elaborate, this Court believes the court's reference to *Sommersdorf*'s "*per se* analysis" refers to *Sommersdorf*'s finding that "there is a distinction between an internal bank accounting procedure and the placing of a notation on an obligor's credit report.  We find that the latter most certainly must be done in an effort to effect collection of the account."  *See Sommersdorf*, 139 B.R. at 701.

10 *See Mahoney*, 368 B.R. at 586 (rejecting *Sommersdorf*'s analysis as support for finding *per se* violation of discharge injunction); *In re Burkey*, No. 09-12371, 2012 WL 5959991, at *4–5 (Bankr. N.D.N.Y. Nov. 28, 2012) (rejecting *Sommersdorf*'s analysis as support for finding *per se* violation of co-debtor stay); *In re Stacker*, 2011 WL 182846, at *1–2 (Bankr. S.D. Ill. January 20, 2011) (dismissing co-debtor's motions alleging creditors violated the co-debtor stay by reporting adverse and incorrect information to credit reporting bureaus while the bankruptcy case was pending and by failing to remove the information upon learning of the case or upon the co-debtor's filing of a dispute with the credit bureaus); *In re Gordon*, 2000 WL 713742, at *1 (Bankr. E.D. Pa. May 16, 2000) (suggesting that *Sommersdorf* may be insufficient positive authority for the debtor to succeed at trial on his claim that credit reporting of a dischargeable or discharged debt violates Section 362(a)(6)); *In re Thistle*, 1998 WL 35412015 at *6–7 (Bankr. E.D. Va. July 17, 1998) (finding, after acknowledging *Sommersdorf*, that "there is no evidence before the court tending to show that the account information shown on the . . . credit report, even if it accurately reflects information supplied by [the creditor] to Equifax after the discharge was entered, was part of an effort by [the creditor] to pressure or harass the [debtors] into paying the balance of the debt").

11 *See, e.g., Hickson v. Home Fed. of Atlanta*, 805 F.Supp. 1567, 1573 (N.D. Ga. 1992), *aff'd*, 14 F.3d 59 (11th Cir. 1994) (holding that a creditor's report to credit agencies of the debtor's failure to make payments under a note failed to state a claim for violation of the automatic stay, reasoning that "Section 362 contains no language prohibiting creditors or any other party from making legitimate reports to credit agencies regarding parties that have filed for bankruptcy."); *Burkey*, 2012 WL 5959991 at *4 ("Though there is little case law addressing whether reporting negative information to a credit reporting agency constitutes an act to collect a debt, the court is persuaded by those courts that hold the credit reporting must be part of a broader effort to collect the debt to be a violation of the codebtor stay; merely reporting the debt to credit reporting agencies is not sufficient to constitute a violation of § 1301."); *In re Smith*, 2000 WL 33710884, at *1, 4, 5 (Bankr. D.S.C. 2000) (finding the creditors' accurate post-petition reporting to credit reporting agencies that the debtor's student loans were in default or nonpayment did not violate Section 362(a)(6), noting that "[t]his agreement between [the creditors] and credit organizations is to share information which ultimately could be helpful in the collection process but it in no way constitutes or results in pressure on the [the debtor] to pay.  An act to promote payment is not the same as an act to extract payment.").

Section 362(k) based on the creditors' purported violation of Section 362(a)(6) by continuing to report credit information after the debtors filed their Chapter 13 petition. *Id.* at *5.

This court finds, as the *Keller* court did, that the reasoning in *Mahoney* is also instructive notwithstanding that the issue there was "whether the bare fact that the post-bankruptcy debtor's credit reports contain information showing that a debt is still owed to a creditor – with nothing more – sufficiently makes out a claim of violation of the discharge injunction." *See Mahoney*, 368 B.R. at 581. After receiving his discharge, the debtor in *Mahoney* filed a complaint alleging that the creditor's reporting of the debtor's pre-petition debts to credit reporting agencies violated the discharge injunction in Section 524 of the Bankruptcy Code because the reports were an act by the creditor to collect a discharged debt. *Id.* at 582. The creditor filed a motion for summary judgment. *Id.* at 581.

The court granted the creditor's motion for summary judgment, finding that:

> [T]he mere reporting of credit information about a debtor *vel non* is not an "act" to collect a discharged debt within the meaning of the [Bankruptcy Code], unless the evidence shows . . . that there is a linkage between the act of reporting and the collection or recovery of the discharged debt.

*Id.* In so finding, the *Mahoney* court noted that other courts refused to grant default judgment to debtors based on their allegations that creditors violated the discharge injunction by continuing to report a balance owed on a discharged debt to credit reporting agencies. *See id.* at 585 (citing *In re Vogt,* 257 B.R. 65, 71 (Bankr. D. Colo. 2000) ("The creditor was under no obligation under the Bankruptcy Code to change the way it reported the status of the loan. False reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code. There is absolutely no showing in this case that the [creditor] had manufactured a false report in order to extract payment."); *In re Irby*, 337 B.R. 293, 295 (Bankr. N.D. Ohio 2005) ("[I]t is difficult to discern

how—and therefore, the Court cannot conclude that—the sole act of reporting a debt, whose existence was never extinguished by the bankruptcy discharge, violates the discharge injunction.")).    The *Mahoney* court also distinguished cases that involved "*other collection activities*" beyond placing a notation in a debtor's credit report, noting that those activities were "the types of affirmative, post-petition acts that might support finding a violation of the discharge injunction."  368 B.R. at 586.

The debtor in *Mahoney* specifically argued that placing a notation on a debtor's credit report "'must certainly be done in an effort to effect collection on the account.'"  *See id.* (quoting the debtor's reply brief, itself purporting to quote *Sommersdorf*).12  The *Mahoney* court rejected this argument, finding that the *Sommersdorf* court reached this conclusion "without real support."  *Mahoney*, 368 B.R. at 586.  The *Mahoney* court reasoned:

> The rhetoric in *Sommersdorf* writes checks that the authorities cannot cash. While it may have been true in *Sommersdorf*—as a factual matter—that the creditor intended to spur collection of the debt when affirmatively placing an entry in the co-obligor's credit report, it is too great a leap to say, as a matter of law, that the mere reporting of a debt to a credit agency is a *per se* violation of the discharge injunction.

*Mahoney*, 368 B.R. at 586.

Thus, the court in *Mahoney* held that merely reporting a debt to a credit reporting agency, without any evidence of harassment, coercion, or some other link to show that the act is likely to be effective as a debt collection device, failed to qualify as an "act" that violates the discharge injunction.  *Id.* at 589.  The court did recognize that "[t]he act of credit reporting *could* be part of a larger course of conduct that, taken together, might constitute an act likely to be effective to collect a debt" if other evidence connected the credit reporting to debt collection.  *Id.*    Following

---

12 As the court in *Mahoney* noted, the correct citation to *Sommersdorf* reads "most certainly must be done in an effort to effect collection of the account."  *Mahoney*, 368 B.R. at 586 n.2 (quoting *Sommersdorf*, 139 B.R. at 701).

the reasoning in *Mahoney*, a notation on a credit report, coupled with other action, may very well

lead to a violation of the discharge injunction and, by analogy, the automatic stay.

> **B.    Verizon's Truthful Reporting of the Debtor's Outstanding Balance Amount to a Credit Reporting Agency Post-Petition But Pre-Discharge Did Not Violate the Automatic Stay.**

In support of its position that the truthful reporting of debts owed does not violate the stay,

Verizon cites to *Irby*, 337 B.R. at 295, *Mortimer*, 2012 WL 3155563 at *3, and *Hickson*, 805 F.

Supp. at 1573.  As discussed above, the courts in *Keller* and *Mahoney* reviewed these cases.  In its

own review, this Court finds *Irby*, *Mortimer* and *Hickson* instructive in that they support the

conclusion that mere truthful reporting of a debtor's credit information post-petition but pre-

discharge is not a violation of the automatic stay.[13]

The Debtor relies on a number of cases, including *Sommersdorf*, in support of his position

that truthful credit reporting is a violation of Section 362.  As noted in *Keller*, *Sommersdorf*'s

finding that "placing of a notation on an obligor's credit report . . . must be done in an effort to

effect collection of the account" has largely been rejected or not followed.  *See Keller*, 2016 WL

3004488 at * 3; *Mahoney*, 368 B.R. at 586; *Burkey*, 2012 WL 5959991 at *4–5; *Stacker*, 2011 WL

182846, *1–2; *Gordon*, 2000 WL 713742 at *1; *Thistle*, 1998 WL 35412015 at *6–7.  Moreover,

the issue in *Sommersdorf* was whether the refusal to remove a credit notation on a *non-debtor* co-

maker's credit report constituted contempt, where the creditor who caused the credit notation to

be made was receiving a 100% payment under the debtors' plan.  139 B.R. at 701.  This case

---

[13] Verizon noted in its Opposition that "[s]ome courts have found that the reporting of debt as 'in collections' by a third-party collection agency after a bankruptcy petition is filed may violate the automatic stay, but that such cases are distinguishable from the instant case." (*See* Docket No. 31 at 6) (citing *In re Hill*, 523 B.R. 704 (Bankr. Mont. 2014)). In *Hill*, the collection agency's president testified that the company knew the debtor's account information in its software system was not accurate days before the system automatically sent the debtor's account to the credit reporting agencies. *See* 523 B.R. at 710.  The president further testified that the debtor's account should never have been in collections.  *Id.*  This Court agrees that *Hill* is distinguishable, since the Debtor here admits that the account information reported by Verizon, the debt holder, was truthful.  (*See* Docket No. 35 at 6).

neither involves a non-debtor, co-maker's credit report, nor does the Debtor here allege that he ever asked Verizon or the credit reporting agencies to change the information on his credit reports. Indeed, the Debtor concedes in his Reply that Verizon's reporting of his account was "truthful." (*See* Docket No. 35 at 6).  Thus, this Court agrees with the reasoning in *Mahoney* and finds that, even if it was true in *Sommersdorf*, as a factual matter, that the creditor intended to spur collection of the debt when it placed the notation in the non-debtor obligor's credit report, "it is too great a leap to say, as a matter of *law,* that the mere reporting of a debt to a credit agency is a *per se* violation" of the automatic stay.  *See Mahoney*, 368 B.R. at 586.

This Court thus declines to follow *Sommersdorf's* analysis, and instead finds the reasoning in *Keller* and *Mahoney* persuasive for the narrow issue to be decided here.[14]  Accordingly, the Court holds that the mere act of reporting a debtor's truthful credit information post-petition—but pre-discharge—without further evidence that the creditor is attempting to collect the debt, is not a violation of the automatic stay.  *See Keller*, 2016 WL 3004488 at * 3; *Mahoney*, 368 B.R. at 581.

Here, the Debtor's allegations fail to meet his burden of demonstrating by a preponderance of the evidence that a violation of the stay occurred.  *See McGowan*, 2014 WL 793125 at *2. Specifically, the Debtor asserts that Verizon re-reported his debt to credit reporting agencies without any notation regarding the Debtor's pending Chapter 7 bankruptcy despite having sufficient notice, time and opportunity to include such a notation.  (Docket No. 35 at 6).  In addition, the Debtor asserts that Verizon "kept Debtor's account status as 'open' with a $1,708.00 balance due."  (*Id.*)  The Debtor concludes that "[t]hese facts strongly indicate that the furnishing

---

[14] Notwithstanding that *Keller* was decided after this Court held oral arguments in this matter, neither of the parties brought that case to the Court's attention.  Interestingly, the Debtor, and not Verizon, referred to *Mahoney* in its papers, albeit as part of an incomplete quotation from another case.  (*See* Docket No. 35 at 5).

of such information to the credit reporting agencies by Verizon was done with the sole intent to coerce Debtor into paying this pre-petition debt." (*Id.*)

This Court disagrees. First, the Debtor cites no case law in support of his contention that Verizon has an obligation to include a notation regarding the Debtor's bankruptcy in its pre-discharge reports to credit reporting agencies, nor does the Bankruptcy Code contain such a requirement. More importantly, the Debtor does not allege any facts, beyond what he concedes is Verizon's truthful reporting of his pre-petition debt to credit reporting agencies, that connect Verizon's reporting to any attempt to collect a debt. *See id.*; *Keller*, 2016 WL 3004488 at * 4; *Mahoney*, 368 B.R. at 586. Indeed, the undisputed facts show that Verizon simply reported the *status quo* to the credit reporting agencies during the pendency of the Debtor's bankruptcy proceeding. Because mere truthful reporting is not a violation of the automatic stay, the Debtor failed to carry his burden as to the first element of Section 362(k). The Court therefore does not reach the additional elements of willfulness and damages.[15]

---

[15] Additionally, both the Debtor and Verizon assert that federal statutory consumer protection law supports their respective positions regarding whether Verizon's reporting violated the automatic stay. The Debtor asserts that it is appropriate to use case law interpreting credit reporting under the FDCPA as a guide in determining whether credit reporting violates the automatic stay. (*See* Docket No. 35 at 3-4). Verizon asserts that its credit reporting procedure with respect to the Debtor's account complied with the FCRA. (*See* Docket No. 31 at 3-5). The Court finds that neither analysis is necessary in light of its conclusion that truthful reporting of credit information post-petition but pre-discharge, without more, is not a violation of the automatic stay. The Court does note, however, that Verizon's argument that it reported the Debtor's credit information consistent with the Verizon Guide is not persuasive. (*See id.* at 3-5). To the extent any of Verizon's published procedures conflict with the requirements of the Bankruptcy Code, those procedures must be corrected.

## V.    <u>**CONCLUSION**</u>

Based on the foregoing, this Court finds that Verizon's truthful reporting of the Debtor's outstanding balance amount to credit reporting agencies post-petition—but pre-discharge—did not violate the automatic stay.  The Motion is therefore denied.

An appropriate order will issue.


Dated:  March 28, 2017.

_____
Honorable Stacey L. Meisel
United States Bankruptcy Judge